**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**UNITED STATES OF AMERICA** | **Docket 113C 1:05CR20745**
**Honorable Judge Jordan**

**v.**

**GARY S. KRASER**

**Defendant**

## KRASER'S RESPONSE TO PRESENTENCE INVESTIGATION REPORT

Comes now the Defendant, Gary S. Kraser, ("Kraser") by and through his undersigned counsel, and files this objection and response to the PreSentence Investigation Report and states:

## SENTENCING CONSIDERATIONS

1. That on or about April 13, 2006 the Defendant's PreSentence Report was prepared and filed by the United States Probation Office.

2. The United States Supreme Court has recently "severed and excised" those provisions which made the Sentencing Guidelines mandatory. United States v Booker, 125 S. Ct. @ 756 (2005) (citing Blakely v. Washington, 124 S. Ct. 2537 (2004). In this light, the Defendant is seeking a reasonable sentence which comports with the statutory mandates. 18 U.S.C. 3553.

3. The Plea Agreement stipulates that the Defendant agreed to plead guilty to

Count 1 of the indictment, which count charges the Defendant with a violation of 18 U.S.C. 1343;wire fraud, a class C felony. PreSentence Report, page 2.

4. Title 18 U.S.C. 1343 carries a statutory penalty of "whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both."

**BASE OFFENSE LEVEL AND ACCEPTANCE OF RESPONSIBILITY**

5.The Base Offense Level in this case has been determined by the probation officer to be level 7 in reference to the offense under U.S.S.G. 2B1.1(a)(1).

6. Krasner gained, through his fraudulent misrepresentations, in excess of $30,000, a "loss" within U.S.S.G. 2B1.1(b)(1). However, according to the government, Krasner has fully reimbursed all donors for all of the amounts and therefore there is no realized loss to any victim and no gain to Krasner. PreSentence Report #21.

7. The probation department has determined that a total adjusted offense level should be level 17. PreSentence Report #25-31.

8. Krasner has executed a complete Acceptance of Responsibility with regard to the above-captioned case. (PreSentence Report #23). See U.S.S.G. 3E1.1(a)(b). Defendant has admitted his conduct which comprised the offense to which he pled and admitted his relevant conduct for which he was held accountable, pursuant to § 3E1.1, Application Note 1(a). Defendant submits that the district court should consider all of the criteria set out in the commentary to § 3E1.1, as well as any other indications of acceptance of responsibility, and weigh these factors in Defendant's favor. United States v. Rodriguez, 959 F. 2d 193 (11th Cir. 1992).

9. The Defendant has a zero criminal history resulting in a criminal history level of category I.PreSentence Report #38.

10. On the basis of the foregoing, the total adjusted sentencing level has been determined to be level 14 with a sentencing range of 15 to 21 months.

**KRASNER'S REQUEST FOR DOWNWARD DEPARTURE**

11. A sentencing court's determination under the sentencing guidelines of a defendant's role in the offense is a factual finding. United States v. Castillo-Valencia, 917 F.2d 494, 501 (11th Cir. 1990). The district court's finding of facts should be set aside only upon clear error. United States v. Davis, 902 F.2d 860, 861 (11th Cir. 1990). Defendant submits that, in the instant case, it would not be

error for this court to make an appropriate finding for mitigation.

12.The sentencing guidelines allow for mitigation in this case stating "... may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense. In such cases, a downward departure may be warranted". U.S.S.G 2B1.1 Application Note 18(C) Downward Departure Consideration.

13. The PreSentence Report states that "According to the government, between September 4, 2005 and September 8, 2005, all of the money contributed to Krasner was returned to the donors". PreSentence Report #21.

14. According to PreSentence Report # 20, it was not until September 14, 2005 that Krasner was directly confronted by the FBI.

15. On this basis, Krasner may be credited against the loss for the money that has been fully reimbursed. See U.S.S.G 2B1.1 Application Note (E) Credits Against Loss -Loss shall be reduced by the following: (i) The money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected. The time of detection of the offense is the earlier of (I) the time the offense was discovered by a victim or government agency; or (II) the

time the defendant knew or reasonably should have known that the offense was detected or about to be detected by a victim or government agency. Krasner qualifies under this section, in that between September 4, 2005 and September 8, 2005, all of the money contributed to Krasner was returned to the donors" and it was not until September 14, 2005 that Krasner was confronted by the FBI, subsequent to the return of the funds to the victims.

16. Krasner acknowledges that his "conduct" had been investigated by the FBI as early as September 4, 2005, and that postings on the internet message board, of which he was a member, appeared as early as 7:00pm on September 4, 2005.

17. However, documents have been filed showing that Krasner was already, prior to the investigation or the posting, making arrangements to lease an aircraft and to deliver medical supplies to the victims of Hurricane Katrina. In fact, this humanitarian effort was completed and Krasner spent more than $35,000.00 of his own personal funds for actual hurricane relief efforts.

18. Although Krasner requested reimbursement from FEMA, this reimbursement for funds was only for funds actually spent and Krasner sought nothing for himself for personal profit. Therefore, as matters currently stand, he in fact contributed in excess of $35,000.00 and refunded over 100% of all monies

raised. This alone takes this case out of the "heartland" of fraud cases under U.S.S.G. 2B1.1 and merits consideration for mitigation.

19. Krasner has fully reimbursed all of the victims in this case, has apologized profusely to all concerned, and admits the stupidity of his actions.

20. Krasner has voluntarily submitted to psychiatric evaluation under the supervision of Dr. Joel L. Savitz, D.O. (See attached report). As the report indicates, Krasner truly believed that he was in the midst of a massive hurricane relief effort and, as time went on, became delusional and lost touch with reality. Dr. Savitz proffers that Krasner did not have criminal intentions but that his actions are indicative of severe untreated emotional problems that surfaced during this crisis.

21. Finally, Krasner was arrested and incarcerated for 30 days during the wrath and aftermath of Hurricane Wilma which caused jail conditions to be severe and deprived Krasner of basic prisoner allowances. As a result of the hurricane, the judiciary was closed, Krasner was unable to obtain a bail hearing, communications with counsel and family were strained at best, and Krasner himself became a virtual hurricane victim albeit a different hurricane, i.e. Wilma and not Katrina.

**KRASNER HAS MET THE BURDEN OF MITIGATION**

22. Krasner proffers that he has met the burden of proving a mitigating role

in the offense by a preponderance of the evidence." United States v. DeVaron, 175 F.3d 930, 939 (11th Cir. 1999) (en banc). Accordingly, Krasner is seeking a minimum of a two (2) level downward departure.

## SENTENCING OPTIONS

23. The Defendant stands ready to accept the reasonable sentence for closure of this case.

24. In light of the foregoing, Krasner is seeking an adjusted total offense level of 12 with a criminal history category of I.

25. Consequently, the Defendant is requesting a sentence within U.S.S.G. level 12 with has a sentencing range of 10 to 16 months.

## CONCLUSION

Wherefore, Defendant **Gary Krasner**, by and through his undersigned counsel files the foregoing with regard to the PreSentence Report and moves this court for a reasonable, and any other relief which this court may deem equitable and just.

Submitted,

Alvin E. Entin, Esq.
Attorney for Defendant
Florida Bar No.127027
Entin and Della Fera, P.A.
110 SE 6th Street, Suite 1970
Fort Lauderdale, FL 33301-5000
Telephone (954) 761-7201 / Fax (954) 764-2443

**CERTIFICATE OF SERVICE**

I Certify that the original and two copies of the foregoing motion has been mailed to the Clerk of Court for the United States District Court for the Southern District of Florida, located at U.S. Courthouse, 301 North Miami Avenue, Miami, Florida 33128 and a copy to Joan Silverstein, Esq., Assistant U.S. Attorney, 99 NE 4th Street, Miami, Florida 33132, and a copy to USPO Connie M. Garcia, U.S. Probation Office, 300 Northeast 1st Avenue, Miami, Florida 33132; this 17th day of April, 2006.

Submitted,

Alvin E. Entin, Esq.

Joel L. Savitz, D.O.
7421 N. University Drive
Suite 207
Tamarac, Florida 33321
Ph-954-722-0402
Fax-954-722-0055

**Psychiatric Evaluation**

April 3, 2006

Gary S. Kraser
DOB: 10/11/1954

Mr. Kraser is a 51 y/o single male who is seen for a psychiatric evaluation. He is the middle child with a brother 42 and a sister 53. His parents are 78 and 80. His dad is caring for his mother who is status post a brain aneurysm.

He was arrested on October 3 following Hurricane Katrina because of postings of messages on the WADND chat board regarding his preparing to fly to New Orleans on a rescue mission. He claimed that he was to leave on the evening of August 28, 2005. Later that evening, he posted that he had flown a rescue and that he had special clearance and would try to help as many people as possible. He was getting 2 planes ready to make the flights with supplies to assist hurricane survivors. As a result of his posting of theses messages, a member of the chat board, Donna Mahony communicated with Mr. Kraser and was excited to assist in the project with helping to solicit funding for this project. She posted messages requesting donations which began to arrive. The funds were wired into either his bank account, Paypal or a trust account with attorney Howard Neu. He also claimed to have 'touched wings' with the president's plane and to have rescued a 7 month old female infant. The total amount of the donations reached approximately $39-40,000.

He worked at his computer for the whole weekend. He did not sleep except sporadically and was completely obsessed with this project. He called American Express to increase his credit limits to pay for flight expenses. It appears that he got in over his head creating a cycle of increasing problems. He was totally involved and believed everything he was doing to help the medical evacuations. He claims to have had 2 charters ready to go from Kalitta Charter.

This project was started according to Mr. Kraser with good intentions and claimed to have made some actual arrangements for a plane with Kalitta Charter.

Mental Status Examination:
Mr. Kraser was dressed appropriately and was cooperative and alert. He displayed increased psychomotor activity with pressured rapid speech. He was displayed

some flight of ideas. It was very difficult for him to maintain his focus. There was no evidence of psychosis. No cognitive dysfunction. He was not depressed. There were no suicidal or homicidal ideations present. His concentration is mildly impaired as he is unable to complete a thought without moving onto the next one. He is oriented in all 3 spheres. His special faculties are grossly intact. His intellect is average. His insight is fair to good. He is remorseful over his actions and believes that he was out of control emotionally at the time of the episode. His judgment is adequate. He presents himself as a caring individual who was carried away with circumstance of the hurricane and his hope and desire to do good for others. This is something he genuinely believes.

He began the interview by recounting an incident that involved the death of a person, whose family did not have the fund for a funeral, indicating that he covered the costs. He then discussed details regarding a business venture which did not work out for him. He developed a cigarette lighter shaped like a miniature car. He invested a great deal of time and funding in this effort. He went to Japan to work on this project. The business did not work out as hoped. He felt betrayed by his partner who pulled out the financial support resulting in the dissolution of the business. This caused major problems for him in all aspects of his life.

He lived in Massapequa, Long Island before relocating to Florida. His business partner served him with a lawsuit to dissolve the company. During this time period, he had many expenses and was unable to manage the financial responsibilities. As a result, he lost his equity in his home, cars and the business. He lost everything and then moved to Florida in February 1994. He stayed here through 1995 and then went back to NY and tried to rekindle the business.

Shortly afterward his mother had a brain aneurysm in Feb 1996. She was in a coma for 3.5 weeks. His father was alone and he stayed with him everyday. He remained in NY. His father continues to care for his mother. He stayed there for months and returned to Florida in May 1997. He currently lives in a rental apartment in Aventura, Florida.

This is the first time Mr. Kraser has had any legal problems. He was jailed in Federal prison for 30 days for wire fraud. He is awaiting a sentencing hearing later this month. He is under indictment for events related to Hurricane Katrina. He owns some domain names for the web which never earned him much money. He used to be in an aircraft-charter, sales and jet engine sales. He tried to get the lighter business started again before his patent expired in May 2004. This failed because the market was overwhelmed with lighters. He then tried to do business on the internet. He got involved with WADND-World Association Domain Name Developers. He knew only one other person in the group as it was all done on the web on a private chat board.

**Psychiatric History:**
Mr. Kraser has no documented psychiatric history or prior treatment. He was depressed following the loss of his home. He has been prescribed Xanax 2mg by his PCP. He is on no other medications except for Toprol-XL for Mitral Valve Prolapse.

**Assessment:**
Based on the interview, Mr. Kraser presents with many of the symptoms consistent with an undiagnosed Bipolar Affective Disorder of the Mixed Type with both episodes of hypomania and severe depression. He relates a history with frequent business dealings that seem to result with painful consequences such as with his lighter business in which he claims to have lost both financially as well as his home. He tends to become obsessively involved in whatever projects he undertakes. He takes them to the extreme not thinking of the negative consequences of his behavior. Most often his intentions are upright and he ends up hurting himself without recognition of his actions.

This episode with Hurricane Katrina was begun with his desire to help others and quickly developed into a 'monster' he was unable to control or even understood that it reached such proportions. He indicates that he meant well and was actually trying to organize the activities but that it had gotten out of hand in many ways resulting in his current problems.

His sleep was impaired for the couple of days just prior to and during the aftermath of the storm. His judgment was also impaired during this time period as he continued in a goal directed manner to accomplish what he perceived as correct. He was easily drawn to unimportant events which he deemed important. In the process, he became grandiose almost to a delusional thinking in which he convinced himself and others that he had rescued a 7 month old female infant, tipped wings with the president's plane over New Orleans and that he worked for the government.

His self-esteem became heightened by all the attention that he obtained by his actions that he lost touch with reality and believed everything he was thinking to be real and that he was actually going to save people in need. His impulsive behavior was unstoppable until it was recognized that he was doing something wrong.

He exhibits remorse over his actions. Upon the knowledge and understanding of his actions, he immediately made restitution to those people and organizations that had financially supported him and begged forgiveness of those who felt deceived by his actions.

His behavior although illegal is not the work of a criminal but rather the actions of an individual with severe untreated emotional problems that most probably have been present for much of his life but unrecognized by those he in most contact.

The recommendation for Mr. Kraser is that he be treated as an emotionally ill individual and rather than being incarnated, he seek psychotherapy and appropriate medication management.

It is my professional opinion that Mr. Kraser would respond to Psychiatric treatment with mood stabilizers and atypical anti-psychotic medications which would help reinforce and improve his judgment, insight and behavioral state. Additionally, he should be required to attend regularly scheduled psychotherapy with a competent therapist to work on resolution of long term internal conflicts and to work on learning to control his impulsive poor judgment.

It is my belief that he has already learned a great deal from this experience and will never break the law again. Prior to this event, he was never arrested. I do not anticipate similar behavior in the future. I feel that Mr. Kraser would benefit from and be more productive in a setting conducive to rebuilding his life.

**Diagnostic Impression:**

**Axis 1-Bipolar Affective Disorder: Type 1**
**Axis 2-Obsessive Compulsive Personality Disorder**
**Axis 3-Mitral Valve Prolapse**
**Axis 4-Stressor 5-Legal problems**
**Axis 5-GAF-Current: 55; Past year-45**

Joel L. Savitz, DO
Board Certified Psychiatrist
American Board of Psychiatry and Neurology
Fellow: American Psychiatric Association

AIR CHARTER QUOTATION

KALITTA CHARTERS

| | | | |
|---|---|---|---|
| **Quote No** | 76977 | **Quote Created** | 09/02/05 |
| **Aircraft** | DC9 | **Available (Zulu)** | 09/02/05 18:56 |
| **Trip Type** | Cargo | **Tail Number** | mm/dd/yy hh:mm |
| **Dispatcher** | Rolando Giron | **Captain** | . |
| **F/O** | . | **ACM** | . |

| | | | |
|---|---|---|---|
| **Customer Name** | STRYKER CORPORATION | **Phone** | 269-385-2600 |
| **Bill Address** | 2725 FAIRFIELD RD | **Fax** | 269-383-7387 |
| **City / State / Zip** | KALAMAZOO MI 49002 | **Alternate** | |
| **Contact Name** | | **Control #** | |

- Actual payload shall be limited to either weight or volume and is an approximate only and not guaranteed. Operating conditions
may result in an increase or decrease in weight limit.
- Customer acknowledges that fees, which are included in the quote, do not include unforeseen additional charges that may be incurred, which will be billed to the customer at Pass-Thru rate. Price does not include built or break for palletized freight.
- OTHER CONDITIONS: Price includes the following charges as itemized below. First hour of wait time at no cost to customer, additional time billed at tariff rate. De-Ice charges are not included. An overnight includes 14 hours starting when aircraft lands.

| | |
|---|---|
| Aircraft Charges * | a |
| Management | |
| Landing Fees | a |
| Parking Fees | |
| Ramp Fees | a |
| Loading and/or Off Load | a |
| Carrier Wait : | |
| Overnights : | |
| Catering | |
| Ground Transportation | |
| International | |
| Customs | |
| Special Equipment | |
| Others | |
| Federal Excise Tax | **$ 2,495.07** |
| Estimated Charges | **$ 43,916.19** |

* Includes Aircraft, Crew, Maintenance, Insurance, Minimum trip and
Fuel Charges. De-icing charges not included.

** WIRE TRANSFER INFO **
KALITTA CHARTERS LLC
ANN ARBOR COMMERCE BANK
ACCOUNT # 3024407
ABA # 072413612

**Route**

| No | From | City Name And Airport Name | To | City Name And Airport Name | Flt Time |
|---|---|---|---|---|---|
| 1 | YIP | DETROIT MI, WILLOW RUN | AZO | KALAMAZOO MI, KAL/BATTL CRK INTL | 0+25 |
| 2 | AZO | KALAMAZOO MI, KAL/BATTL CRK INTL | LFT | LAFAYETTE LA, REGIONAL | 1+55 |
| 3 | LFT | LAFAYETTE LA, REGIONAL | YIP | DETROIT MI, WILLOW RUN | 2+01 |

## Special Notes / Remarks

**Contact** **Remarks**

843 Willow Run Airport

Ypsilanti, MI 48198 ● 1-800-525-4882